EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Gobierno de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Elizabeth Torres Rodríguez, en su capacidad oficial como delegada especial en la Delegación Congresional de Puerto Rico a la Cámara de Representantes del Congreso de los Estados Unidos de América<br><br>Peticionaria | Certiorari<br><br>2022 TSPR 136<br><br>210 DPR ____ |

Número del Caso:  CC-2022-580


Fecha: 4 de noviembre de 2022


Tribunal de Apelaciones:

    Panel IX


Abogado de la parte peticionaria:

    Lcdo. Michael Corona Muñoz


Materia: Resolución del Tribunal con Voto Particular Disidente.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO
SALA II

Gobierno de Puerto Rico

    Recurrido

      v.

Elizabeth Torres Rodríguez,     CC-2022-0580
en su capacidad oficial como
delegada especial en la
Delegación Congresional de
Puerto Rico a la Cámara de
Representantes del Congreso
de los Estados Unidos de
América

    Peticionaria

Sala de Despacho integrada por el Juez Asociado señor Martínez Torres como su Presidente, y los Jueces Asociados señor Kolthoff Caraballo, señor Feliberti Cintrón y señor Colón Pérez.

RESOLUCIÓN

En San Juan, Puerto Rico, a 4 de noviembre de 2022.

A la solicitud de <u>certiorari</u> presentada por la parte peticionaria, se provee no ha lugar.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Pérez expediría y emitió Voto Particular Disidente.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Gobierno de Puerto Rico

    Recurrido

       v.                        CC-2022-0580

Elizabeth Torres Rodríguez

    Peticionaria

Voto Particular Disidente emitido por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 4 de noviembre de 2022.

**Lo que mal comienza, mal termina.**

I.

Hace apenas un año atrás, en *Rosario Rodríguez v. Rosselló et al. II*, 207 DPR 870 (2021) (Colón Pérez, voto particular disidente), advertíamos que la ley que en ese momento era objeto de estudio por este Tribunal se caracterizaba por ser un estatuto que propendía el uso de fondos públicos para adelantar fines privados. Señalábamos, además, que la *Ley para Crear la Delegación Congresional de Puerto Rico*, *infra,* generaría múltiples controversias, pues se trataba de una disposición legal mediante la cual se autorizó -- de forma ilegal e inconstitucional -- el desembolso de fondos del erario  para promocionar y

adelantar determinada agenda político-partidista.

El paso inexorable del tiempo nos ha dado la razón. Son muchas las controversias -- jurídicas y no jurídicas -- que han surgido como consecuencia del cuerpo de ley al que hemos hecho referencia. La última de ellas -- la que nos ocupa -- versa sobre si uno de los funcionarios electos para adelantar determinada fórmula política de estatus -- en este caso, la Estadidad -- está o no cumpliendo con su trabajo y, de no estarlo, si debe ser removido de sus funciones.[1] La contestación a esa interrogante sería sencilla, más este no es el caso para brindarla. Ello pues, a todas luces -- como hemos previamente sentenciado -- estamos ante un estatuto con serios visos de inconstitucionalidad.

**Ahora bien, si estuviésemos ante un estatuto constitucionalmente válido, no albergamos duda alguna que -- luego de un detenido y cuidadoso análisis de la normativa que**

---

[1] La presente controversia tiene su génesis en cierto *Recurso especial de destitución de delegada congresional* que el Estado Libre Asociado de Puerto Rico (en adelante, "ELA") presentó ante el Tribunal de Primera Instancia en contra de la Sra. Elizabeth Torres Rodríguez (en adelante, "señora Torres Rodríguez"). En suma, el ELA, al amparo de la *Ley para Crear la Delegación Congresional de Puerto Rico*, *infra*, solicitó la destitución de la señora Torres Rodríguez como delegada especial por ésta presuntamente incumplir con los deberes impuestos en el estatuto de referencia.

Así las cosas, el 29 de abril de 2022 el foro primario emitió una *Sentencia* mediante la cual desestimó la acción presentada por el ELA por entender que la misma se trataba de una cuestión política en la cual los tribunales no debían inmiscuirse.

Por su parte, el Tribunal de Apelaciones, contrario a lo dispuesto por el Tribunal de Primera Instancia, concluyó que la controversia era justiciable por no constituir una cuestión política, por lo que revocó el dictamen recurrido. A juicio del foro apelativo intermedio son los tribunales, en su función de intérpretes de la ley, los llamados a dirimir si la señora Torres Rodríguez ha cumplido o no con sus deberes como delegada especial según dispuesto en la *Ley para Crear la Delegación Congresional de Puerto Rico*, *infra*.

**gobierna este asunto -- la contestación a la anterior interrogante sería que ese funcionario electo por el Pueblo de Puerto Rico, en hechos tan particulares como los que nos ocupan, sólo debe ser removido de su cargo por el mismo Pueblo; a través del voto directo en las urnas de la democracia. Sin embargo, en lo que a este caso se refiere, enmarcarnos en esa tarea de interpretación legal resultaría en un ejercicio totalmente fútil.**

Y es que, tal y como adelantamos en *Rosario Rodríguez v. Rosselló et al. II*, *supra* (Colón Pérez, voto particular disidente) la *Ley para Crear la Delegación Congresional de Puerto Rico*, Ley Núm. 167-2020, 16 LPRA sec. 985 *et seq.*, es, a todas luces, inconstitucional. Ello, pues, el referido estatuto autoriza el uso de fondos públicos para fines patentemente privados; en este caso, promocionar una de las varias fórmulas de estatus en nuestro entorno sociopolítico, en contravención de lo dispuesto en nuestra Constitución.

Sobre el particular, basta señalar aquí que, el Artículo IV, Sección 9, de la Constitución del Estado Libre Asociado de Puerto Rico establece que "[s]ólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley". Art. VI, Sec. 9, Const. ELA, LPRA, Tomo 1. **Sobre la referida cláusula constitucional, este Tribunal ha sido enfático en la finalidad pública que se debe perseguir en el uso del dinero del País, es decir, que se emplee en aquello que redunde en**

**el beneficio y bienestar de la ciudadanía.** *Rosario Rodríguez v. Rosselló et al. II*, *supra* (Colón Pérez, voto particular disidente); *Aponte Rosario et al. v. Pres. CEE II*, 205 DPR 407, 472 (2020) (Colón Pérez, opinión disidente); *Báez Galib y otros v. C.E.E. II*, 152 DPR 382, 395 (2002).

En esa línea, apuntamos que la concesión de fondos del erario debe obedecer a unos estrictos parámetros constitucionales. *Rosario Rodríguez v. Rosselló et al. II*, *supra*, pág. 886 (Colón Pérez, voto particular disidente); *Aponte Rosario et al. v. Pres. CEE II*, *supra,* pág. 473 (Colón Pérez, opinión disidente); *P.S.P. v. E.L.A.*, 107 DPR 590, 600 (1978). En otras palabras, que los fondos públicos nunca deben asignarse para fomentar empresas privadas, ni para el beneficio de personas o entidades particulares. 2 Diario de Sesiones de la Convención Constituyente 904-906 (1952). Véase, además, *Rosario Rodríguez v. Rosselló et al. II*, *supra,* pág. 885 (Colón Pérez, voto particular disidente); *Aponte Rosario et al. v. Pres. CEE II*, *supra*, págs. 472-473 (Colón Pérez, opinión disidente).

Al respecto, en *Rosario Rodríguez v. Rosselló et al. II*, *supra*, señalamos que resultaba impermisible autorizar dinero del erario para adelantar agendas político-partidistas. *Rosario Rodríguez v. Rosselló et al. II*, *supra*, pág. 886 (Colón Pérez, voto particular disidente). **Sobre esto último, precisamos que "cuando los propósitos de una legislación están dirigidos únicamente a adelantar una agenda política-partidista, la medida queda huérfana de un fin público**

**discernible y definido"**. (Énfasis suplido). *Íd.* En consecuencia, y "'[d]ebido a que la Constitución del Estado Libre Asociado de Puerto Rico no favorecía, ni favorece alternativa de estatus alguno', [concluimos, en ese momento, que] utilizar los fondos públicos para adelantar la causa de una fórmula [de estatus] en particular, [llámese Estado Libre Asociado, Estadidad o Independencia], es contrario al mandato constitucional". *Íd.*, págs. 886-887.

Así pues, en virtud de lo anterior, y tratándose la ley bajo estudio -- la *Ley para Crear la Delegación Congresional de Puerto Rico*, *supra* -- de una medida huérfana de un fin público, resulta ser un ejercicio fútil evaluar si la delegada congresional electa, entiéndase la Sra. Elizabeth Torres Rodríguez, ha cumplido o no con su trabajo. Cuando un estatuto es inconstitucional, ello resulta innecesario.

Procedía entonces expedir la causa de epígrafe para revocar tanto al Tribunal de Apelaciones, como al Tribunal de Primera Instancia, y declarar la inconstitucionalidad de la ley objeto de estudio en el presente litigio. Lamentamos que este no haya sido el proceder de una mayoría de mis compañeros de Sala.

## II.

**Ahora bien, -- más allá de lo que pueda ser nuestro sentir en torno a las controversias ante nuestra consideración --, no podemos finalizar este escrito sin expresar que nos resulta extremadamente inaudito que una mayoría de esta Sala, siguiendo el errado proceder del**

Tribunal de Apelaciones, coloque a un juez o jueza del foro primario en la delicada tarea de tener que escoger entre: (1) dirimir si la señora Elizabeth Torres Rodríguez está o no cumpliendo con su tarea de adelantar determinado estatus político (la Estadidad, en este caso) o, por el contrario, (2) cumplir con su irrenunciable deber de observar estrictamente lo dispuesto en los Cánones de Ética Judicial, *infra,* (los cuales, como se sabe, prohíben la participación, <u>directa e indirecta</u>, de los jueces y juezas en los procesos políticos).[2] Precisamente, para evitar lo anterior es que --

---

[2] En lo particular, el Canon 28 de nuestros Cánones de Ética Judicial, 4 LPRA Ap. IV-B, C.28, establece lo siguiente sobre las actividades políticas:

> [l]as juezas y los jueces se abstendrán de participar en el **proceso político**, sin menoscabo de su derecho al sufragio, a sus propias ideas sobre cuestiones políticas y a los deberes y las funciones que les asignan las leyes y los reglamentos electorales.
>
> Sin que la siguiente enumeración excluya otras actividades, que por su carácter político le están vedadas, las juezas y los jueces no podrán:
>
> [...]
>
> **(e) <u>hacer expresiones, comentarios o manifestaciones públicas sobre asuntos o actos de naturaleza político-partidista</u>;**
>
> [...]
>
> Ni **(i) fomentar los intereses de organismo o partido político alguno.** (Énfasis suplido).

Tal como expresamos en *In re Hernández Torres*, *infra*:

> [e]l fin de estas prohibiciones es mantener la independencia judicial, principio fundamental de nuestro ordenamiento judicial. El propósito del mencionado canon, en conjunto con la antes citada disposición constitucional, es prohibir todo tipo de participación de los jueces en las controversias relativas a asuntos políticos que se llevan a cabo en nuestro país o que éstos se involucren de cualquier forma en el quehacer político del país. La razón de ser de este canon es que la participación de jueces en la esfera política podría tener el efecto de desmerecer y lesionar la imagen del juez en la comunidad en que ejerce su delicado ministerio, ya que dicha participación puede causar divisiones y enconos, no sólo entre la ciudadanía y la Judicatura, sino entre los

**tal y como lo sentenció el Hon. Anthony Cuevas Ramos, Juez del Tribunal de Primera Instancia, en un escrito en extremo fundamentado y celosamente redactado -- existe la doctrina de cuestión política.[3]**

Sin lugar a dudas, la prudencia -- sí, esa que debe dirigir nuestros trabajos -- hoy no prevaleció.

Ángel Colón Pérez
Juez Asociado

---

propios integrantes de la Rama Judicial. (Énfasis omitido). *In re Hernández Torres*, 167 DPR 823, 841-842 (2006).

[3] Específicamente, como parte de la doctrina de autolimitación judicial, hemos establecido que el Poder Judicial no intervendrá en determinada controversia cuando se trata de resolver una cuestión política. *Noriega v. Hernández Colón*, 135 DPR 406, 420 (1994). En esencia, la doctrina de cuestión política impide la revisión judicial de asuntos que fueron delegados a las otras ramas políticas del Gobierno o, en última instancia, al electorado. *Córdova y otros v. Cámara Representantes*, 171 DPR 789, 800 (2007); *P.P.D. v. Gobernador II*, 136 DPR 916, 922 (1994); *Noriega Rodríguez v. Jarabo*, 136 DPR 497, 509 (1994).

En particular, este Tribunal ha establecido que un asunto no es justiciable o susceptible de adjudicación judicial por plantear una cuestión política cuando: (1) éste ha sido asignado textualmente por la Constitución a otra rama del Gobierno; **(2) no existan criterios de decisión susceptibles de descubrirse y administrarse por los tribunales, o bien por la presencia de otros factores análogos, y (3) existen consideraciones derivadas de la prudencia.** *Córdova y otros v. Cámara Representantes*, *supra*, págs. 800-801.

Por tanto, la doctrina de cuestión política limita la intervención judicial en asuntos que claramente son de la injerencia de las ramas políticas del Gobierno. *Íd.*, pág. 801. Por ello, aquellos pleitos que envuelven una cuestión política "no son susceptibles de determinación judicial". *R. Serrano Geyls*, *Derecho Constitucional de Estados Unidos y Puerto Rico*, San Juan, Ed. C. Abo. P.R., 1986, Vol. I, pág. 679.